# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT C. ANDERSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTEL, INC., CHRISTOPHER A. | ) | |
| SINCLAIR, MICHAEL J. DOLAN, | ) | C.A. No. 11816-VCMR |
| TREVOR EDWARDS, FRANCES D. | ) | |
| FERGUSSON, ANN LEWNES, | ) | |
| DOMINIC NG, VASANT M. | ) | |
| PRABHU, DEAN A. | ) | |
| SCARBOROUGH, DIRK VAN DE | ) | |
| PUT, KATHY WHITE LOYD, KEVIN | ) | |
| FARR, AND BRYAN STOCKTON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: November 4, 2016
Date Decided: January 19, 2017

Seth D. Rigrodsky, Brian D. Long, Gina M. Serra, and Jeremy J. Riley, RIGRODSKY & LONG, P.A., Wilmington, Delaware; Joseph M. Profy, Jeffrey J. Ciarlanto, and David M. Promisloff, PROFY PROMISLOFF & CIARLANTO, P.C., Philadelphia, Pennsylvania; Alfred G. Yates, Jr. and Gerald L. Rutledge, LAW OFFICE OF ALFRED G. YATES, JR., P.C., Pittsburgh, Pennsylvania; *Attorneys for Plaintiff.*

Gregory P. Williams, Kevin M. Gallagher, and Sarah A. Clark, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Paul Vizcarrondo, Stephen R. DiPrima, and Courtney L. Heavey, WACHTELL, LIPTON, ROSEN & KATZ, New York, New York; *Attorneys for Defendants Christopher A. Sinclair, Michael J. Dolan, Trevor Edwards, Frances D. Fergusson, Ann Lewnes, Dominic Ng, Vasant M. Prabhu, Dean A. Scarborough, Dirk Van de Put, Kathy White Loyd, Kevin Farr, and Mattel, Inc.*

David E. Ross, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; *Attorney for Defendant Bryan Stockton*.

**MONTGOMERY-REEVES, Vice Chancellor.**

This derivative action involves allegations that a board of directors improperly investigated and wrongfully refused to bring suit to recover up to $11.5 million, which was paid to the corporation's former chairman and chief executive officer as part of a severance package and consulting agreement. The defendant directors move to dismiss the derivative complaint under Court of Chancery Rule 23.1 for failure to allege wrongful demand refusal and Court of Chancery Rule 12(b)(6) for failure to state a claim. I hold that the complaint does not adequately plead that demand was wrongfully refused and grant the motion to dismiss.

## I. BACKGROUND

The facts outlined in this opinion derive from Plaintiff's Verified Shareholder Derivative Complaint (the "Complaint") and the documents attached to it.

### A. Parties

Plaintiff Robert C. Andersen owns stock in nominal defendant Mattel, Inc., a Delaware corporation ("Mattel"). Mattel designs, manufactures, and markets a range of toy products worldwide. Its stock trades on the NASDAQ under the ticker symbol MAT.

Defendants Christopher A. Sinclair, Michael J. Dolan, Trevor Edwards, Frances D. Fergusson, Ann Lewnes, Dominic Ng, Vasant M. Prabhu, Dean A. Scarborough, Dirk Van de Put, and Kathy White Loyd were the directors of Mattel at the time of Plaintiff's Complaint (the "Director Defendants").

1

Defendant Bryan Stockton was Mattel's chief executive officer ("CEO") beginning in 2012 and the chairman of the board beginning in 2013. He ceased to hold those positions on January 25, 2015.

Defendant Kevin Farr has served as Mattel's Chief Financial Officer since 2000.

## B.     Facts

On June 30, 2009, Stockton entered into a letter agreement with Mattel under which he became a participant in the Mattel Executive Severance Plan (the "Severance Plan"). The Severance Plan entitles Stockton to severance benefits in the event that his departure from Mattel qualifies as a "Covered Termination." Section 2(e) of the Severance Plan defines a Covered Termination as follows:

> "**Covered Termination**" shall mean that, at any time after a Participant's Eligibility Date, either (i) the Participant has resigned from Mattel for Good Reason, or (ii) the Participant's employment with Mattel is involuntarily terminated by Mattel without Cause.[1]

Section 2(i) of the Severance Plan defines "Good Reason" as (1) a material diminution in Stockton's duties, authority, or responsibility, (2) a material diminution in or failure to pay Stockton's base salary, (3) a failure to make certain executive compensation plans available to Stockton, (4) a modification to the

---

[1]     Compl. ¶ 62.

2

Severance Plan that is materially adverse to Stockton, or (5) the failure of a Mattel successor to assume the Severance Plan.[2]

After two years of growth with Stockton as CEO, Mattel's stock price dropped substantially in 2014. On January 1, 2014, Mattel's stock price closed at $47.39 per share. By October 2, 2014, the stock price had fallen to $31.11 per share, and on October 16, 2014, Mattel announced that its net income for the third quarter of 2014 decreased 21.5% from the prior year due to significantly lower demand for Barbie dolls. On December 31, 2014, Mattel's stock price closed at $30.95 per share. In light of the poor performance, on January 25, 2015, Stockton ceased to be chairman and CEO of Mattel. The next day, Mattel announced in a press release that Stockton had "resigned as Mattel's Chairman and Chief Executive Officer and resigned from the Board of Directors."[3]

On April 9, 2015, Mattel filed and distributed its 2015 proxy statement. The proxy statement stated that "[o]n January 25, 2015, Mr. Stockton ceased to be Chairman of the Board and CEO and his employment was terminated. His termination of employment qualified as a termination by Mattel without cause under

---

[2]     *Id.* ¶¶ 63, 66.

[3]     *Id.* ¶ 54.

the Severance Plan, and he received severance benefits and payments."[4]  As a result of Stockton's separation from Mattel, he allegedly was paid $10 million under the Severance Plan.  The April 2015 proxy statement also revealed that Stockton would be paid $125,000 per month under a twelve-month consulting agreement with Mattel.[5]

Because of the discrepancies in Mattel's disclosures regarding whether Stockton resigned or was terminated, Plaintiff sent a demand letter to the board of directors on April 17, 2015.[6]  The letter demanded that the board:

> (i) undertake (or cause to be undertaken) an independent internal investigation into Management's violations of California law, Delaware law, and/or federal law; (ii) commence a civil action against each member of Management to recover for the benefit of the Company the amount of damages sustained by the Company as a result of their breaches of fiduciary duties alleged herein; (iii) immediately terminate the Company's Consulting Agreement with Stockton; (iv) attempt to "clawback" any severance-related benefits already provided to Stockton; and (v) enter into a "freeze" or standstill agreement with Stockton until the actions demanded in this letter have concluded.[7]

---

[4]  *Id.* ¶ 6 (quoting Mattel Proxy Statement 85 (Apr. 9, 2015)) (internal quotation marks omitted).

[5]  *Id.* ¶ 7.

[6]  *Id.* Ex. A.

[7]  *Id.* Ex. A, at 7.

On May 4, 2015, the Mattel board responded to Plaintiff's demand through counsel and requested evidence of Plaintiff's stock ownership in Mattel, which Plaintiff provided.[8] On September 8, 2015, the board's counsel sent a second letter stating that "the Board has unanimously determined to reject [the Demand]"[9] (the "Refusal Letter"). The Refusal Letter explained that "there is no evidence to support a claimed breach of fiduciary duties."[10] Further, it acknowledged that "Stockton did, in fact, resign from his positions at the company."[11] But because the public disclosures made clear that Stockton did not leave voluntarily, "the disclosures . . . concerning Bryan Stockton's departure from the company were true and correct."[12] The letter also stated that "the severance benefits paid to Stockton were validly owed to him"; "the consulting agreement . . . would allow for an amicable transition"; and "litigation would be a distraction for the Board and senior management and would likely have an adverse impact on Mattel's business during a period in which Mattel is trying to navigate a turnaround."[13]

---

[8]     *Id.* ¶¶ 14-15, Ex. B.

[9]     *Id.* Ex. C, at 1.

[10]    *Id.* Ex. C, at 2.

[11]    *Id.*

[12]    *Id.*

[13]    *Id.* Ex. C, at 2-3.

Plaintiff responded to the Refusal Letter on September 17, 2015, requesting the documents reviewed in Mattel's internal investigation (or alternatively a list of the documents reviewed), a list of the individuals interviewed, any report that the board had produced, and any written summaries of the interviews.[14] The board's counsel responded on September 30, 2015, stating that counsel for the board "interviewed twenty-four people, including all of the current members of the board, the relevant current and former officers of the company, and the advisors who played a role in the underlying events."[15] According to the letter, the board's counsel "also reviewed approximately 12,400 documents, including the relevant board materials" in the investigation.[16] Mattel did not provide the requested documents or the report.

### C. Procedural History

On December 15, 2015, Plaintiff filed the Complaint alleging three derivative claims. Count I is a claim for breach of fiduciary duty against all Defendants; count II is a claim for unjust enrichment against Stockton; and count III is a claim for waste against the Director Defendants. Plaintiff asserts that his demand was wrongfully refused, giving him standing to bring these derivative claims. On March 24, 2016, Defendants moved to dismiss, arguing that the board's demand refusal was a proper

---

[14] *Id.* Ex. D.

[15] *Id.* Ex. E.

[16] *Id.*

6

exercise of business judgment and that the Complaint fails to state a claim upon which relief can be granted. Plaintiff opposed the motion to dismiss, and I heard oral argument on November 4, 2016.

## II. ANALYSIS

### A. Standard of Review

A stockholder seeking to assert derivative claims on behalf of a Delaware corporation in this Court must satisfy the demand requirement in Court of Chancery Rule 23.1. Rule 23.1 states that derivative complaints "shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort."[17]

Where, as here, a plaintiff makes demand on the board of directors, the plaintiff concedes that the board is disinterested and independent for purposes of responding to the demand.[18] "The effect of such concession is that the decision to refuse demand is treated as any other disinterested and independent decision of the

---

[17] Ct. Ch. R. 23.1.

[18] *Ironworkers Dist. Council v. Andreotti et al.*, 2015 WL 2270673, at *24 (Del. Ch. May 8, 2015); *see also Spiegel v. Buntrock*, 571 A.2d 767, 775 (Del. 1990) ("By making a demand, a stockholder tacitly acknowledges the absence of facts to support a finding of futility.").

7

board—it is subject to the business judgment rule."[19]  Accordingly, the only issues

the Court must examine in analyzing whether the board's demand refusal was proper

are "the good faith and reasonableness of its investigation."[20]  This Court has

recently reiterated the standard a plaintiff alleging wrongful demand refusal must

meet as follows:

> [T]o survive a motion to dismiss under Rule 23.1 where demand has been made and refused, a plaintiff must allege particularized facts that raise a reasonable doubt that (1) the board's decision to deny the demand was consistent with its duty of care to act on an informed basis, that is, was not grossly negligent; or (2) the board acted in good faith, consistent with its duty of loyalty. Otherwise, the decision of the board is entitled to deference as a valid exercise of its business judgment.[21]

Further, Rule 23.1 requires plaintiffs to plead wrongful demand refusal allegations

with particularized facts.  Thus, "[v]ague or conclusory allegations do not suffice,

and this Court need not blindly accept as true all allegations, nor must it draw all

inferences from them in plaintiff's favor unless they are reasonable inferences."[22]

---

[19]     *Spiegel*, 571 A.2d at 775.

[20]     *Id.* (quoting *Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)) (internal quotation marks omitted).

[21]     *Friedman v. Maffei*, 2016 WL 1555331, at *9 (Del. Ch. Apr. 13, 2016) (quoting *Ironworkers*, 2015 WL 2270673, at *24) (internal quotation marks omitted).

[22]     *Id.* (quoting *Ironworkers*, 2015 WL 2270673, at *25) (internal quotation marks omitted).

8

**B.**     **Plaintiff Fails to Plead Particularized Facts Alleging that the Board Was Grossly Negligent**

Plaintiff argues that the Mattel board conducted a grossly negligent investigation because Mattel kept the written report of its internal investigation secret, did not disclose the identities of the witnesses interviewed, and failed to create an independent committee to investigate the demand.[23] In this case, these arguments fail to raise a reasonable inference that the board was grossly negligent.

**1.     Legal standard for finding gross negligence**

The gross negligence inquiry focuses on whether the board properly informed itself of material information reasonably available to it before refusing the demand.[24] A grossly negligent investigation is one where the board did not investigate at all or pursued "such an inadequate investigation, in light of the seriousness of the demand, that a court may reasonably infer a breach of the duty of care."[25] As the Court of

---

[23]     Pl.'s Opp. Br. 24.

[24]     *See Smith v. Van Gorkom*, 488 A.2d 858, 872-73 (Del. 1985) ("The [business judgment] rule itself 'is a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.' Thus, the party attacking a board decision as uninformed must rebut the presumption that its business judgment was an informed one. . . . We think the concept of gross negligence is also the proper standard for determining whether a business judgment reached by a board of directors was an informed one." (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (1984))).

[25]     *Ironworkers*, 2015 WL 2270673, at *26.

Chancery stated in *Levine v. Smith*, "[w]hile a board of directors has a duty to act on an informed basis in responding to a demand . . . there is obviously no prescribed procedure that a board must follow."[26]

### 2. Plaintiff fails to raise a reasonable inference that the board was grossly negligent in refusing his demand

Plaintiff does not allege particularized facts raising a reasonable inference that Defendants' investigation was grossly negligent. The Mattel board's counsel interviewed "twenty-four people, including all of the current members of the board, the relevant current and former officers of the company, and the advisors who played a role in the underlying events."[27] Counsel also reviewed 12,400 documents in connection with the board's consideration of Plaintiff's demand.[28] Thereafter, a report of findings was prepared, and the board reviewed and rejected the demand. Mattel did not provide its report when Plaintiff requested it, making it difficult for the Court to fully understand the scope of the board's investigation. But, Plaintiff was aware that he could have obtained the report through a Section 220 demand[29] and chose not to seek the report for strategic reasons. Plaintiff believed that the

---

[26] *Levine v. Smith*, 591 A.2d 194, 214 (Del. 1991), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

[27] Compl. Ex. E.

[28] *Id.*

[29] Pl.'s Opp. Br. 30 n.16; Oral Arg. Tr. 22-23.

10

Refusal Letter was inexplicable on its face and wanted to avoid a "trial . . . to prove something that is already readily apparent."[30]  Plaintiff's argument that the investigation was inadequate because the report was kept secret might carry more weight if Plaintiff had made a Section 220 demand.  "Instead, [Plaintiff] knowingly avoided accessing that source of potentially valuable information."[31]  Plaintiff has not pled sufficient facts to reasonably infer gross negligence given the amount of effort that went into the board's investigation and Plaintiff's affirmative decision not to access additional information.

Plaintiff's argument that Mattel's investigation was flawed because the board did not form a special committee also fails.  Through Plaintiff's demand letter,

---

[30]     Pl.'s Opp. Br. 30 n.16.

[31]     *Friedman v. Maffei*, 2016 WL 1555331, at *16 (Del. Ch. Apr. 13, 2016).  These facts also serve to distinguish *City of Orlando Police Pension Fund v. Page*, 970 F. Supp. 2d 1022 (N.D. Cal. 2013).  In *Page*, the United States District Court for the Northern District of California relied heavily on the board's failure to provide its report in holding that the board wrongfully refused demand.  *Id.* at 1030-32.  Here, Plaintiff's letter requesting the report also requested all of the documents Defendants had reviewed, a list of all individuals Defendants had interviewed, and any written summaries of the interviews.  Compl. Ex. D.  Although counsel for Defendants conceded that Plaintiff could have obtained the report through a Section 220 demand, Defendants declined to negotiate with Plaintiff over which documents to provide absent such a demand.  *Id.* Ex. E; Oral Arg. Tr. 47-48.  But, Plaintiff recognized that a Section 220 request was an available method for obtaining the report and chose not to pursue such an action for strategic reasons.  Pl.'s Opp. Br. 30 n.16; Oral Arg. Tr. 22-23.

11

Plaintiff conceded that the board was independent at the time of the demand.[32]

Plaintiff has not pled any facts suggesting that the board became interested or

beholden to Stockton or acted without independence from Stockton such that an

independent committee was necessary.[33]

## C. Plaintiff Fails to Plead Particularized Facts Alleging that the Board Acted in Bad Faith

Plaintiff argues that the Mattel board's demand refusal was in bad faith

because it is inexplicable given the merits of Plaintiff's claim. The Refusal Letter

states that Mattel's disclosures were "true and correct," but the disclosures allegedly

were inconsistent: Mattel's initial press release stated that Stockton "resigned," and

Mattel's April 2015 proxy statement stated that Stockton was "terminated."

According to Plaintiff, those two disclosures cannot both be "true and correct."

---

[32]   *Ironworkers Dist. Council v. Andreotti et al.*, 2015 WL 2270673, at *24 (Del. Ch. May 8, 2015).

[33]   *See Grimes v. Donald*, 673 A.2d 1207, 1219 (Del. 1996), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ("Simply because the composition of the board provides no basis *ex ante* for the stockholder to claim with particularity and consistently with Rule 11 that it is reasonable to doubt that a majority of the board is either interested or not independent, it does not necessarily follow *ex post* that the board in fact acted independently, disinterestedly or with due care in response to the demand. A board or a committee of the board may appear to be independent, but may not always act independently. If a demand is made and rejected, the board rejecting the demand is entitled to the presumption of the business judgment rule unless the stockholder can allege facts with particularity creating a reasonable doubt that the board is entitled to the benefit of the presumption.").

Further, Plaintiff argues that the Refusal Letter's acknowledgment that Stockton "resign[ed]"[34] without stating that Stockton had a Good Reason suggests that Stockton's resignation is not a Covered Termination, and the severance was so obviously wrongfully paid as to rise to the level of bad faith. These arguments inappropriately focus on the merits of Plaintiff's underlying claim and do not cast a reasonable doubt as to whether the Mattel board refused Plaintiff's demand in good faith.

### 1. Legal standard for finding bad faith

"Demonstrating that directors have breached their duty of loyalty by acting in bad faith goes far beyond showing a questionable or debatable decision on their part."[35] In order to adequately allege bad faith demand refusal, a complaint must plead particularized facts showing that "the directors . . . acted with scienter, *i.e.*, with a motive to harm, or with indifference to harm that will necessarily result from the challenged decision—here, that decision being rejection of the Plaintiff's demand."[36] The merits of the underlying claim are relevant "only for purposes of ascertaining whether the Board's decision was 'so inexplicable that a court may reasonably infer that the directors must have been acting for a purpose unaligned

---

[34] Compl. Ex. C, at 2.

[35] *Ironworkers*, 2015 WL 2270673, at *27.

[36] *Id.*

13

with the best interest of the corporation; that is, in bad faith.'"[37] "Finally, the Court takes into account not only the defendants' countervailing legal arguments, but also the other relevant factors considered by the board—*e.g.*, whether the costs of pursuing the claims outweigh the expected recovery."[38]

## 2. Plaintiff fails to raise a reasonable inference that the board refused his demand in bad faith

Plaintiff fails to allege particularized facts raising a reasonable inference that Defendants acted in bad faith. In *Friedman v. Maffei*, a case with facts similar to this case, this Court held that a board of directors did not wrongfully refuse the plaintiff's demand. In *Friedman*, Dara Khosrowshahi was a director of TripAdvisor, Inc. ("TripAdvisor") and a director and CEO of Expedia, Inc. ("Expedia").[39] Khosrowshahi left the TripAdvisor board after Expedia completed an acquisition that caused TripAdvisor and Expedia to have competing interests.[40] Khosrowshahi's Restricted Stock Unit Agreement with TripAdvisor provided for immediate vesting of certain restricted stock units if "(i) [Khosrowshahi] incurs a termination of Service (other than a voluntary termination of Service) and (ii) there has not been a good

---

[37] *Friedman v. Maffei*, 2016 WL 1555331, at *9 (Del. Ch. Apr. 13, 2016) (quoting *Ironworkers*, 2015 WL 2270673, at *26) (internal quotation marks omitted).

[38] *Id.* at *12.

[39] *Id.* at *1.

[40] *Id.* at *4-5.

faith determination by a majority of the board of directors (other than [Khosrowshahi]) of the ultimate parent entity . . . of the existence of Cause . . . ."[41] After Khosrowshahi left the board, his restricted stock units became vested. A TripAdvisor stockholder demanded that the board bring suit challenging the accelerated vesting of the restricted stock units, but the board refused to bring suit, prompting the stockholder to sue for wrongful demand refusal.

The plaintiff in *Friedman* largely argued that the TripAdvisor board incorrectly determined that Khosrowshahi was terminated involuntarily and, thus, was entitled to the restricted stock units.[42] This Court emphasized that "the pertinent reason to doubt is *not* doubt about the propriety of the underlying conduct, nor is it doubt about whether the Board, in rejecting the demand, made a wise decision; it is doubt about whether the Board's action, wise or foolish, *was taken in good faith*."[43] The Court held that the TripAdvisor board had not rejected the plaintiff's demand in bad faith because the rejection was not inexplicable in light of Delaware case law

---

[41]   Compl. Ex. 1, *Friedman*, 2016 WL 1555331 (C.A. No. 11105-VCMR) (TripAdvisor Restricted Stock Unit Agreement for Dara Khosrowshahi § 5(b) (Dec. 20, 2011)).

[42]   *Friedman*, 2016 WL 1555331, at *9.

[43]   *Id.* at *14 (quoting *Ironworkers*, 2015 WL 2270673, at *26) (internal quotation marks omitted).

15

holding that a forced resignation is an involuntary termination.[44] The *Friedman* Court also recognized the TripAdvisor board's business considerations in refusing to bring suit, including the costs of bringing suit and the distraction that would result from litigation involving the company's top executives.[45]

Plaintiff argues that in this case, unlike in *Friedman*, the parties defined an involuntary resignation by contract through the definition of Good Reason. He asserts that because Defendants do not contend that Stockton resigned for Good Reason, his "resign[ation]"[46] was not involuntary, and Stockton was not entitled to the severance.[47] But Plaintiff concedes that the Severance Plan actually does not define "involuntary resignation" or "involuntary termination." And Plaintiff has not identified any other provision in the Severance Plan that purportedly contracts around the Delaware case law holding that a forced resignation is an involuntary termination.[48] Thus, the issue before the Mattel board was no different from

---

[44]   *Id.* at *13 (citing *Thompkins v. Franciscan Elder Care*, 2008 WL 2602171, at *2 (Del. Super. June 27, 2008); *Kaminski v. Ann Taylor Loft*, 2000 WL 33114360, at *3 (Del. Super. Oct. 27, 2000)).

[45]   *Id.* at *15.

[46]   Compl. Ex. C, at 2.

[47]   Pl.'s Opp. Br. 28-29; Oral Arg. Tr. 40.

[48]   *See Friedman*, 2016 WL 1555331, at *13; *Thompkins*, 2008 WL 2602171, at *2 (finding that an employee was "constructively discharged" where he chose to resign when presented with the choice "of resigning as opposed to being terminated"); *Kaminski*, 2000 WL 33114360, at *3 (noting that "a constructive discharge by the

*Friedman* where this Court held that the board's determination that Khosrowshahi did not leave voluntarily was not made in bad faith.[49] "Even if I were to credit [Plaintiff's] interpretation of the [Severance Plan] as the most reasonable interpretation, that would not suffice to find the [b]oard had wrongfully refused [the] demand."[50] Like in *Friedman*, "[t]he question is not whether the [b]oard's conclusion was wrong; the question is whether the [b]oard intentionally acted in disregard of [Mattel's] best interests in deciding not to pursue the litigation the Plaintiff demanded."[51] "[T]he fact that the [b]oard's justifications for refusing [the] demand fall within 'the bounds of reasonable judgment' is fatal to [the] claim that

---

employer" occurs if an employee is "given only the option of resigning or facing imminent termination"). Plaintiff also fails to cite any contrary case law.

[49] *Friedman*, 2016 WL 1555331, at *13. Plaintiff also attempts to distinguish *Friedman* by arguing that in *Friedman*, I "entertained the concept of an 'involuntary' resignation because there was no contractual relationship between the director and the Company . . . coupled with the power of the Company and the controlling shareholder to remove the director at any time and for any reason under the bylaws." Pl.'s Opp. Br. 28. That is not actually a distinction. In this case, Stockton was entitled to severance under the Severance Plan if he was involuntarily terminated without cause—something the board had the power to do. In *Friedman*, Khosrowshahi was entitled to the immediate vesting of his restricted stock units under the RSU Agreement in the same situation. *Friedman*, 2016 WL 1555331, at *3.

[50] *Friedman*, 2016 WL 1555331, at *14.

[51] *Id.* at *15 (quoting *Ironworkers*, 2015 WL 2270673, at *32) (internal quotation marks omitted).

17

the refusal was made in bad faith."[52]  As such, Plaintiff has not adequately pled that the Mattel board's determination that Stockton's "resign[ation]"[53] "qualified as a termination by Mattel without cause under the Severance Plan"[54] was inexplicable.

In addition to addressing Plaintiff's substantive claims, the Refusal Letter provides several other reasons why the board refused the demand.  The Refusal Letter, like the refusal letter in *Friedman*,[55] cites the high cost of litigation.  It also explains that the board believed that this type of litigation would be an unnecessary distraction at a time when senior management was attempting to turn around the company's performance and could have an adverse impact on executive recruitment and retention.[56]  Plaintiff thus fails to allege that the Mattel board improperly refused demand in this case, and the Complaint is dismissed under Rule 23.1.  Because all of Plaintiff's claims are derivative and I grant Defendants' Rule 23.1 motion to dismiss, their Rule 12(b)(6) motion to dismiss is moot.

---

[52]     *Id.* (quoting *Crescent/Mach I P'rs, L.P. v. Turner*, 846 A.2d 963, 981 (Del. Ch. 2000)).

[53]     Compl. Ex. C, at 2.

[54]     *Id.* ¶ 4 (quoting Mattel Proxy Statement 85 (Apr. 9, 2015)) (internal quotation marks omitted).

[55]     *See Friedman*, 2016 WL 1555331, at *15.

[56]     Compl. Ex. C, at 2-3.

## III.  CONCLUSION

To summarize, I hereby GRANT Mattel's motion to dismiss under Court of Chancery Rule 23.1 in light of Plaintiff's failure to adequately plead improper demand refusal.

**IT IS SO ORDERED.**