**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: March 8, 2018
Date Decided: March 12, 2018

Stuart M. Grant, Esquire
Nathan A. Cook, Esquire
Rebecca A. Musarra, Esquire
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, DE 19801

Stephen P. Lamb, Esquire
Meghan M. Dougherty, Esquire
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
500 Delaware Ave., Suite 200
Wilmington, DE 19899

Donald J. Wolfe, Jr., Esquire
T. Brad Davey, Esquire
Tyler J. Leavengood, Esquire
Jay G. Stirling, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
Wilmington, DE 19899

Re: *Oklahoma Firefighters Pension & Retirement System v. Michael L. Corbat et al.*, Civil Action No. 12151-VCG

Dear Counsel:

On December 18, 2017, I dismissed the Plaintiffs' Complaint in this action under Court of Chancery Rule 23.1 for failure to make presuit demand.[1] The Complaint alleged that the Defendants—directors and officers of nominal defendant Citigroup, Inc.—breached their fiduciary duties by failing to prevent Citigroup and

---

[1] *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, 2017 WL 6452240, at *26–27 (Del. Ch. Dec. 18, 2017). I assume familiarity with my December 18 opinion, and I recite only those facts necessary to understand my decision here.

several of its subsidiaries from violating a variety of laws and regulations.[2]  The Plaintiffs' theory of liability was that the Defendants knew of red flags pointing to corporate misconduct and chose to ignore them.[3]  The purported red flags related to four separate corporate traumas suffered by the company, including a $140 million fine imposed in July 2015 for failure to comply with anti-money laundering ("AML") laws.[4]  I held that demand was not excused as to the Plaintiffs' *Caremark*[5] claim because the Complaint failed to adequately allege that any of Citigroup's directors faced a substantial likelihood of liability for bad-faith inaction in the face of the purported red flags.[6]

On January 17, 2018, the Plaintiffs moved to reopen the judgment under Court of Chancery Rules 60(b)(2) and 60(b)(6), and to amend their Complaint pursuant to Court of Chancery Rule 15(aaa).  They argue that newly discovered evidence supports a finding that demand is excused as to Citigroup's failure to ensure compliance with AML laws.  Specifically, on December 27, 2017[7]—a little over a week after this Court dismissed the Complaint—Citibank entered into a consent order with the Office of the Comptroller of the Currency ("OCC").[8]  The OCC found

---

[2] *Id.* at *3–13.
[3] *Id.* at *1–2.
[4] *Id.* at *7.
[5] *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996).
[6] *Corbat*, 2017 WL 6452240, at *26–27.
[7] The consent order was publicly announced on January 4, 2018.
[8] Proposed Am. Compl. ¶ 76.

2

that Citibank had failed to comply with the 2012 OCC consent order, which required Citibank to improve its internal controls relating to compliance with AML laws.[9] The OCC further found that Citibank had violated several AML laws, and it imposed a $70 million fine on the bank.[10] The 2017 consent order contains no admission of wrongdoing by Citibank, and it does not address whether the Citibank or Citigroup board knowingly allowed the violations to occur.[11]

Rule 60(b)(2) provides that a court "may relieve a party . . . from a final judgment, order, or proceeding" on the basis of "newly discovered evidence."[12] To obtain relief under Rule 60(b)(2), the movant must show that

> [1] the newly discovered evidence has come to his knowledge since the [judgment]; [2] that it could not, in the exercise of reasonable diligence, have been discovered for use [before the judgment]; [3] that it is so material and relevant that it will probably change the result . . . ; [4] that it is not merely cumulative or impeaching in character; and [5] that it is reasonably possible that the evidence will be produced at the trial.[13]

Rule 60(b) advances "two important values: the integrity of the judicial process and the finality of judgments."[14] "The rule exists to serve the first; its administration

---

[9] *Id.*

[10] *Id.*

[11] Defs.' Answering Br. Ex. 2, art. II, § 1 ("The Bank, *without admitting or denying any wrongdoing*, consents and agrees to issuance of the accompanying Consent Order for a Civil Money Penalty . . . by the Comptroller." (emphasis added)).

[12] Ct. Ch. R. 60(b)(2).

[13] *Levine v. Smith*, 591 A.2d 194, 202 (Del. 1991) (citation omitted), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 1998).

[14] *Credit Lyonnais Bank Nederland, N.V. v. Pathe Commc'ns Corp.*, 1996 WL 757274, at *1 (Del. Ch. Dec. 20, 1996).

3

must acknowledge the second."[15] Thus, Delaware law is clear that reopening a judgment based on new evidence is disfavored.[16] The decision whether to grant relief under Rule 60(b)(2) is committed to the sound discretion of the Court.[17]

For purposes of my analysis, I assume (without so finding) that the 2017 OCC consent order represents newly discovered evidence that was in existence before judgment was entered in this case. Nonetheless, the Plaintiffs have failed to meet their "heavy burden"[18] of showing that the existence of the latest consent order would probably alter my conclusion that demand is not futile as to the AML allegations. Thus, I decline to reopen the judgment.

To satisfy the materiality prong of the Rule 60(b)(2) test, the Plaintiffs must show that, if I were to consider the new evidence in the context of a renewed motion to dismiss for failure to make presuit demand, I would more likely than not conclude that demand was in fact excused as to the Defendants' failure to ensure compliance with AML laws.[19] To establish demand futility, a plaintiff must allege particularized

---

[15] *Id.*

[16] *Norberg v. Sec. Storage Co. of Wash.*, 2002 WL 31821025, at *2 (Del. Ch. Dec. 9, 2002); *see also MCA, Inc. v. Matushita Elec. Indus. Co., Ltd.*, 785 A.2d 625, 635 (Del. 2001) ("Because of the significant interest in preserving the finality of judgments, Rule 60(b) motions are not to be taken lightly or easily granted.").

[17] *Vianix Del. LLC v. Nuance Commc'ns, Inc.*, 2011 WL 487588, at *4 (Del. Ch. Feb. 9, 2011).

[18] *Concord Steel, Inc. v. Wilmington Steel Processing Co., Inc.*, 2010 WL 3931097, at *7 (Del. Ch. Oct. 7, 2010).

[19] *See Grobow v. Perot*, 1988 WL 127094, at *2 (Del. Ch. Nov. 25, 1988) (granting a Rule 60(b)(2) motion where the new allegations would likely change the outcome of a renewed Rule 23.1 motion). As the Plaintiffs point out, the Court in *Grobow* stated that it could not "conclude as a matter of law that the new evidence, as reflected in the proposed amended pleading, would not change the outcome on a renewed motion to dismiss under Rule 23.1." *Id.* That language appears

4

facts "creat[ing] a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."[20] Such reasonable doubt exists where the complaint's allegations "reveal board inaction of a nature that would expose [at least half of the directors who would consider a demand] to 'a substantial likelihood' of personal liability."[21] Where, as here, demand futility is premised on purported *Caremark* liability, the question is whether the plaintiff has alleged particularized facts suggesting that at least half of the directors in place when the complaint was filed had acted in bad faith by consciously disregarding their oversight duties.[22] As our Supreme Court has recognized, "directors' good faith exercise of oversight responsibility may not invariably prevent employees from violating criminal laws, or from causing the corporation to incur significant financial liability, or both."[23]

---

to suggest that Rule 60(b)(2)'s materiality prong is satisfied so long as there is a reasonable possibility that the newly discovered evidence would change the outcome. But the Court's holding did not depend on such a broad reading of the applicable standard; instead, it rested on the finding that the new allegations were "sufficiently '. . . material and relevant . . . [to] . . . probably change the result,' because a reasonable doubt would be created as to the applicability of the business judgment rule." *Id.* (alterations in original). Thus, I do not read *Grobow* as departing from the well-established principle that newly discovered evidence is material under Rule 60(b)(2) only if it would probably change the result.

[20] *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

[21] *Horman v. Abney*, 2017 WL 242571, at *6 (Del. Ch. Jan. 19, 2017) (quoting *Rales*, 634 A.2d at 936).

[22] *E.g.*, *Corbat*, 2017 WL 6452240, at *14–15.

[23] *Stone v. Ritter*, 911 A.2d 362, 373 (Del. 2006).

Here, the Plaintiffs argue that the 2017 OCC consent order supports a finding of demand futility as to the AML allegations. That consent order is the fourth one relating to AML compliance that Citigroup or its subsidiaries have entered into since 2012. In July 2010, the OCC issued Citibank a Part 30 order[24] directing it to improve its AML compliance measures.[25] Then, in April 2012, the OCC issued a consent order against Citibank, directing it to address continuing weaknesses in the bank's AML controls.[26] About four months later, Banamex USA ("BUSA"), a Citigroup subsidiary, entered into a consent order with the Federal Deposit Insurance Corporation ("FDIC") and the California Department of Financial Institutions; this order also involved AML compliance issues.[27] The next year, in March 2013, the Federal Reserve System issued yet another consent order, this time requiring *Citigroup* to implement adequate AML controls.[28] Approximately two years later, the FDIC and the California Department of Business Oversight imposed a $140 million fine on BUSA for AML oversight failures.[29] In my December 18 opinion, I held that demand was not excused as to these allegations because the Complaint failed to plead with particularity that the Citigroup board consciously chose to do

---

[24] A Part 30 order refers to an order issued under 12 C.F.R. § 30.2, which "establishes procedures for requiring submission of a compliance plan and issuing an enforceable order pursuant to" the law requiring the OCC "to establish safety and soundness standards."
[25] *Corbat*, 2017 WL 6452240, at *5.
[26] *Id.*
[27] *Id.*
[28] *Id.* at *6.
[29] *Id.* at *7.

nothing about AML compliance over this five-year period; instead, the picture that emerged was of a board that made a good-faith (albeit unsuccessful) effort to secure compliance.[30]

The Plaintiffs now urge me to infer bad-faith inaction from the continuing failure to achieve compliance with both the terms of the 2012 OCC consent order and the requirements of various AML laws, as implied by the 2017 OCC consent order. But that latest OCC consent order does not give rise to a reasonable inference of intentional dereliction of duties. It does not state that the Citigroup or Citibank board knowingly failed to ensure compliance, or even that the directors of those companies were grossly negligent in their efforts in that area. Nor does it negate the Citigroup board's significant efforts to achieve AML compliance from 2010 to 2015. Instead, it simply reveals that Citibank was not in compliance for a longer period of time than the operative pleading suggested. That additional information would be unlikely to alter my conclusion that demand is not futile as to the Defendants' failure to secure compliance in the AML arena.[31] Bad results alone do not imply bad faith.

---

[30] *Id.* at \*16 ("[F]ar from doing nothing in response to red flags, the Citigroup board and its various committees oversaw significant efforts to comply with the consent orders and ensure that adequate AML controls were implemented.").

[31] *See id.* at \*17 (noting that a substantial likelihood of *Caremark* liability could not be established via allegations that "the Citigroup board could have done a better job addressing the issues highlighted by . . . the consent orders"). At oral argument on the motion to reopen the judgment, counsel for the Plaintiffs suggested that I could infer directorial bad faith from the size of the fine imposed by the OCC. The $70 million fine, which was imposed for violations from September 30, 2015, to December 27, 2017, equates to a penalty of $85,470 a day. That puts Citibank in the third tier of the statutory regime for civil monetary penalties under 12 U.S.C. § 1818(i)(2)(C),

Thus, the Plaintiffs have failed to satisfy Rule 60(b)(2)'s materiality prong, and I decline to reopen the judgment based on newly discovered evidence.

The Plaintiffs also seek relief under Rule 60(b)(6). That rule is a catchall provision allowing the Court to vacate a judgment for "any other reason justifying relief."[32] To obtain relief under Rule 60(b)(6), the movant must establish "extraordinary circumstances that justify reopening the case."[33] Thus, "[a] movant under Rule 60(b)(6) is required to make an even stronger showing than that required under the other five subsections of the rule."[34] Because the Plaintiffs have failed to carry their burden under Rule 60(b)(2), they cannot obtain relief under Rule 60(b)(6). Moreover, because I decline to reopen the judgment, I need not address the Plaintiffs' request to amend their Complaint under Rule 15(aaa).

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

which covers "any insured depository institution which . . . knowingly" commits a range of punishable actions. The problem, however, is that the Plaintiffs have given me no reason to infer that the actors at *Citibank* responsible for knowing violations include at least half of the *Citigroup* directors who would consider a demand.

[32] Ct. Ch. R. 60(b)(6).

[33] *T.R. Investors, LLC v. Genger*, 2012 WL 5471062, at *3 (Del. Ch. Nov. 9, 2012) (internal quotation marks and citation omitted).

[34] *High River Ltd. P'ship v. Forest Labs., Inc.*, 2013 WL 492555, at *9 (Del. Ch. Feb. 5, 2013).