# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

DALE RIKER,              )
                                 )

       Plaintiff,          )
                                 )

       v.                     )     C.A. No. 2019-0314-AGB
                                 )

TEUCRIUM TRADING, LLC,    )
                                 )

       Defendants.      )

## ORDER DENYING DEFENDANT'S
## RULE 60(b) MOTION

WHEREAS:

A.     On April 26, 2019, Dale Riker filed a verified complaint against Teucrium Trading, LLC ("Teucrium" or the "Company") seeking, among other things, to obtain certain books and records under 6 *Del. C.* § 18-305 (the "18-305 Action").[1]

B.     On May 12, 2020, after holding a one-day trial in the 18-305 Action, the court issued a post-trial memorandum opinion (the "Opinion") in which the court found that Riker "testified credibly that he was looking to value his interest in Teucrium to determine whether to sell or hold his shares" and thus had "demonstrated a proper purpose for requesting documents pertaining to his

---

[1] Dkt. 1.

Valuation Purpose."[2] As a result, the court ordered Teucrium to produce a limited number of documents to Riker relevant to this purpose.[3] On May 19, 2020, the court entered a Final Order and Judgment (the "Final Judgment").[4]

C. On November 24, 2020, Riker's counsel sent Teucrium a draft complaint to be filed in New York state court, which alleged that, before the filing of the 18-305 Action, "[Riker] and [Sal] Gilbertie reached a purportedly binding agreement by which Gilbertie committed in an oral agreement to purchase Dale Riker's equity in Teucrium for $5 million."[5]

D. On November 30, 2020, Teucrium, Gilbertie, Cory Mullen-Rusin, Steve Kahler, and Carl Miller III filed a verified complaint in this court (C.A. No. 2020-1018-AGB) seeking, among other relief, a declaration that Riker never "reached a binding agreement to sell to Gilbertie his equity in Teucrium for $5 million" (the "Second Delaware Action").[6]

---

[2] *Riker v. Teucrium Trading, LLC*, 2020 WL 2393340, at *4 (Del. Ch. May 12, 2020) (citing Trial Tr. at 22-23 (Nov. 19, 2019) (Dkt. 123)). The court also found that Riker had abandoned a second purpose (*i.e.*, his "Financial Performance Purpose") and failed to demonstrate a basis to receive any documents concerning a third purpose (*i.e.*, his "Governance Purpose"). *See id.* at *2, *3, *8-11.

[3] *Id.* at *8.

[4] Dkt. 141.

[5] Mot. for Post-J. Relief Under Rule 60 ("Mot.") Ex. B ¶¶ 40-41 (Dkt. 144).

[6] *Id.* ¶¶ 66-68.

2

E.    On December 7, 2020, Riker filed a verified shareholder derivative complaint in New York state court (the "New York Action") against Gilbertie, Miller, Mullen-Rusin, and Kahler, which alleges in relevant part, that:

85.    On September 11, 2018, with Vedder Price, as Teucrium Trading's outside corporate counsel, acting as intermediary, Mr. Gilbertie and Mr. Riker reached an agreement pursuant to which Mr. Riker would sell his Class A Member units to Mr. Gilbertie for $5 million. Mr. Gilbertie represented that "he could get the money by the end of the week," *i.e.* September 14, 2018. Mr. Gilbertie and Mr. Riker agreed that the $5 million would be placed in escrow.

86.    Mr. Riker was ready, willing, and able to perform his obligations under the parties [sic] agreement and was ready to tender his units in Teucrium Trading upon payment by Mr. Gilbertie of $5 million.

87.    At no time did Mr. Gilbertie or Mr. Riker express that the sale was contingent upon the execution of definitive documents.

\*    \*    \*    \*

280.    Plaintiff requests that this Court specifically enforce his contract with Mr. Gilbertie for the sale of Plaintiff's units in Teucrium Trading.

281.    Plaintiff and Mr. Gilbertie reached agreement on all essential terms of the sale of Mr. Riker's Class A Member units to Mr. Gilbertie and therefore an enforceable agreement exists.

282.    Namely, that Mr. Gilbertie would pay Mr. Riker $5 million dollars to acquire all of Mr. Riker's Class A Member units.

283.    Mr. Riker was ready, willing and able to perform.

284.    Mr. Gilbertie failed to perform without excuse.

285.    At no time did either Mr. Riker or Mr. Gilbertie express that the sale of Mr. Riker's units was contingent on definitive documentation.

3

286. As a result, Mr. Riker was deprived of an opportunity to sell his Teucrium Class A Member units, which are otherwise highly illiquid.[7]

F.    On January 12, 2021, Teucrium moved for post-judgment relief under Court of Chancery Rules 60(b) (the "Motion") seeking the following relief:

(a)    A finding that nothing in the Opinion or the Final Judgment "forecloses a finding that Riker litigated the books and records action in bad faith, particularly in light of his under-oath statement since then that he believed he had reached a binding agreement to sell his shares in 2018."[8]

(b)    A finding "that Riker litigated the books and records action in bad faith."[9]

(c)    "Establishing a briefing schedule for the quantification of an award of attorneys' fees in favor of Defendant Teucrium."[10]

(d)    "In the alternative to (b) and (c), the Court should reopen the record, schedule a hearing on the bad faith issue, and allow a prompt deposition of Riker."[11]

G.    On April 22, 2021, the New York court dismissed the New York Action in "the interests of comity" and for "the avoidance of inconsistent judgments," reasoning as follows:

---

[7] Mot. Ex. A ¶¶ 85-87, 280-86.

[8] Mot. at 3-4.

[9] *Id.* at 4.

[10] *Id.*

[11] *Id.*

4

The record in this case indicates there is testimony in the adjudicated [18-305 Action] that is inconsistent with claims asserted in this case. And the record further establishes a significant overlap between the issues in this case and the [Second Delaware Action] that is still pending. Given that the plaintiff in this case initiated litigation in Delaware, notwithstanding that the controlling documents contemplate proceedings in New York, the Court is dismissing this action pursuant to CPLR 3211(a)(4) without prejudice to the case being refiled after the conclusion of the second Delaware action.[12]

**NOW THEREFORE**, the court having considered the Motion, **IT IS HEREBY ORDERED**, this 3rd day of May, 2021, as follows:

1.     Court of Chancery Rule 60(b) provides, in relevant part, that "[o]n motion and upon such terms as are just, the Court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons . . . (2) newly discovered evidence; [or] (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party."[13]

2.     Teucrium's primary argument is made under Court of Chancery Rule 60(b)(2). To obtain relief from a final judgment under Rule 60(b)(2) motion, a movant must demonstrate that:

---

[12] Dkt. 151 Ex. A at 2.

[13] Ch. Ct. R. 60(b). Paragraph 25 of the Motion also quotes subparts (5) and (6) of Rule 60(b) but Teucrium makes no argument under either provision, thus waiving those grounds for relief. Nor does Teucrium argue that either subpart (1) or (4) of Rule 60(b) provides grounds for relief.

[1] the newly discovered evidence has come to [movant's] knowledge since the trial; [2] that it could not, in the exercise of reasonable diligence, have been discovered for use at the trial; [3] that it is so material and relevant that it will probably change the result . . .; [4] that it is not merely cumulative or impeaching in character . . .; and [5] that it is reasonably possible that the evidence will be produced at the trial.[14]

"Delaware law is clear that reopening a judgment based on new evidence is disfavored."[15] The decision whether to grant relief under Rule 60(b)(2) is committed to the sound discretion of the Court.[16]

3.      According to Teucrium, the newly discovery evidence that has recently come to its attention "is comprised of an under-oath admission by Riker, which he filed in his New York action on December 7, 2020."[17] That admission is reflected in the sworn allegations from the complaint in the New York Action quoted in Recital E above. Further refining its position, Teucrium explains in its reply that "while the *form* of the new evidence, the under-oath statement by Riker, did not exist at the time of trial, the *facts* about whether he believed he had sold his equity in a binding agreement did exist at the time of trial."[18]

---

[14] *Levine v. Smith*, 591 A.2d 194, 202 (Del. 1991) (citation omitted), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

[15] *Keen-Wik Ass'n v. Campisi*, 2020 WL 6162957, at *2 (Del. Ch. Oct. 19, 2020).

[16] *Vianix Del. LLC v. Nuance Commc'ns, Inc.*, 2011 WL 487588, at *4 (Del. Ch. Feb. 9, 2011).

[17] Mot. ¶ 27.

[18] Dkt. 150 ¶ 12.

6

4. The premise of the Motion is that the facts from the New York complaint quoted above—*i.e.*, that Riker believed in September 2018 that he and Gilbertie had reached an agreement pursuant to which Gilbertie would acquire Riker's shares of Teucrium for $5 million—directly contradict the following testimony Riker provided during his direct examination at trial in the 18-305 Action in December 2019:

Q. Let's start with the first purpose. Why were you seeking to value your shares?

A. Well, I'm trying to decide if I want to hold my shares or if I want to sell my shares.

Q. And in January of 2019, were you contemplating selling your shares?

A. Yes.

\* \* \* \* \*

Q. And so, sir, do you currently have a buyer for your shares?

A. No, I do not.[19]

5. Riker responds that there is no contradiction because, although Riker believed he and Gilbertie "had reached an agreement for Mr. Gilbertie to buy" his shares, Gilbertie reneged on the agreement and thus Riker did not "have a willing

---

[19] Trial Tr. at 22-23 (Nov. 19, 2019) (Dkt. 123).

buyer lined up to purchase his interest" and only had "a cause of action against an entirely unwilling buyer" when he testified in the Section 18-305 Action.[20]

6. In my opinion, Teucrium has failed to satisfy the requirements for obtaining relief under Rule 60(b)(2) because it has not demonstrated that the allegedly newly discovered evidence "could not, in the exercise of reasonable diligence, have been discovered for use at the trial."[21]

7. Significantly, Teucrium cross-examined Riker at trial on the subject of Gilbertie purchasing his shares:

> Q. [D]o you recall asking or demanding of Mr. Gilbertie $5 million in exchange for the sale of your shares?
>
> A. I did not demand $5 million, but I do recall that discussion about $5 million, yes, absolutely.
>
> Q. Do you recall you ever stating that as a price for the shares in some way?
>
> A. Yes.[22]

8. Despite eliciting this testimony, Teucrium did not follow up to probe the full extent of Riker's communications with Gilbertie concerning a potential $5 million transaction. Teucrium did not follow up to ask Riker basic questions

---

[20] Dkt. 147 ¶¶ 4, 7.

[21] *Levine*, 591 A.2d at 202.

[22] Trial Tr. at 96.

concerning, for example, what Riker said to Gilbertie and vice versa during these communications. Nor did Teucrium ask more specifically whether Riker believed Gilbertie had agreed to purchase his shares—a question that logically would have followed after establishing who said what to whom about a potential $5 million transaction. Notably, it is not as if that subject never came up in the Section 18-305 Action. To the contrary, Riker's counsel questioned Gilbertie on this very subject during discovery:

> Q: Had you reached any understanding as to whether one of you was going to sell or buy the shares of the other?
>
> A. We attempted but did not resolve and reach an understanding. We did not reach one.[23]

9. Given these circumstances, the court is not satisfied—as it must be to grant relief under Rule 60(b)(2)—that Riker's putative belief that Gilbertie agreed in 2018 to purchase Riker's shares for $5 million could not have been discovered in connection with the trial of the Section 18-305 Action had Teucrium exercised reasonable diligence.

10. Turning to its second ground for the Motion, Teucrium argues in conclusory fashion in a single sentence that "Riker's conduct also constitutes a fraud on the Court, or at least evidences his bad faith conduct in this litigation."[24]

---

[23] Dkt. 118 Ex. B at 75.

[24] Mot. ¶ 32.

9

11. "A party seeking to vacate an order on the ground that his or her opponent effectuated a fraud on the court bears a heavy burden . . . [which] requires a showing of 'the most egregious conduct involving a corruption of the judicial process itself.'"[25] "To succeed on a claim under Rule 60(b)(3) that an 'opponent used fraud [or misconduct] . . . in obtaining a judgment, [the movant] must ordinarily do so by proof of clear and convincing evidence and within a reasonable period of time after the final judgment has been entered.'"[26]

12. Irrespective of the evidentiary standard, Teucrium's cursory argument does not come close to showing the type of "egregious conduct" necessary to reopen a final judgment under Rule 60(b)(3).[27]

---

[25] *MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 785 A.2d 625, 639 (Del. 2001) (quoting Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2870 (3d. ed.)).

[26] *In re U.S. Robotics Corp. S'holders Litig.*, 1999 WL 160154, at *12 (Del. Ch. Mar. 15, 1999) (alterations in original) (Strine, V.C.) (quoting *Glinert v. Wickes Cos., Inc.*, 1992 WL 165153, at *3 (Del. Ch. July 14, 1992) (Allen, C.), *aff'd*, 620 A.2d 857 (Del. 1993)).

[27] *See Bailey v. Bailey*, 89 A.2d 476, 2014 WL 1004033, at *2 (Del. Mar. 14, 2014) (TABLE) (Strine, C.J.) ("That a witness's testimony is arguably inconsistent in some respects with evidence that another party belatedly discovered does not satisfy the stringent standard to reopen a case for misrepresentation or fraud.").

\* \* \* \* \*

13.    For the reasons explained above, the court declines to exercise its discretion to reopen the final judgment in this action. Accordingly, the Motion is DENIED.

_____
Chancellor

11